**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:20-CV-00085-HBB**


**NILES K. BUCKMAN**                                                          **PLAINTIFF**

**V.**

**KILOLO KIJAKAZI, ACTING COMMISSIONER[1]**
**SOCIAL SECURITY ADMINISTRATION**                              **DEFENDANT**


**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Niles K. Buckman ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both Plaintiff (DN 17) and Defendant (DN 22) have filed a Fact and Law Summary.   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 14).   By Order entered April 12, 2021 (DN 15), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

---

1   Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

<u>FINDINGS OF FACT</u>

Plaintiff protectively filed an application for Disability Insurance Benefits and Supplemental Security Income Benefits on November 5, 2017 (Tr. 10, 239-40, 241-46).   Plaintiff alleges to have become disabled on July 7, 2017, as a result of back pain and leg pain (Tr. 10, 94, 108, 124, 140).   These claims were initially denied on December 22, 2017,[2] and the claims were again denied upon reconsideration on April 18, 2018[3] (Tr. 10, 105-06, 119-20, 121-22, 138, 154, 155-56).   At that time, Plaintiff requested a hearing before an administrative law judge (Tr. 10, 179-80).   Administrative Law Judge Jeffrey L. Eastham ("ALJ") conducted a video hearing from Bowling Green, Kentucky on April 17, 2019 (Tr. 10, 35-37).   Virtually present at the hearing from Evansville, Indiana was Plaintiff and his attorney Samuel Kyle LaMar (Id.).   During the hearing, William J. Kiger testified as a vocational expert (Tr. 10, 35-38, 61-65).

At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 7, 2017, the alleged onset date (Tr. 13).   At the second step, the ALJ determined Plaintiff has the following severe impairments: osteoarthritis/bursitis of the hips; lumbar and thoracic spine degenerative disc disease; coronary artery disease with angina status post stent placement; remote history of bilateral pulmonary emboli with long-term anticoagulation therapy;

---

2   The ALJ's determination lists the date that Plaintiff's claims were initially denied as January 2, 2018 (Tr. 10). However, the date next to the signature of the Disability Adjudicator/Examiner lists the date as December 22, 2017 (Tr. 105-06, 119-20).   Moreover, the Disability Determination and Transmittal documents associated with these denials also lists the date as December 22, 2017 (Tr. 120-21).   As such, the undersigned will use the December 22, 2017 date.

3   The ALJ's determination lists the date that Plaintiff's claims were denied upon reconsideration as April 20, 2018 (Tr. 10).   However, the date next to the signature of the Disability Adjudicator/Examiner lists the date as April 18, 2018 (Tr. 138, 154).   Moreover, the Disability Determination and Transmittal documents associated with these denials also lists the date as April 18, 2018 (Tr. 155-56).   As such, the undersigned will use the April 18, 2018 date.

and obesity (Id.).   The ALJ also found Plaintiff's hypertension, hyperlipidemia, heel spurs, depression, and recurrent major depressive disorder to be nonsevere (Tr. 13-14).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 (Tr. 15).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except for the following limitations: Plaintiff can occasionally push and pull with the bilateral lower extremities; can occasionally use the bilateral lower extremities to use foot controls; can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; Plaintiff should avoid concentrated exposure to extreme cold/heat, pulmonary irritants, vibrations, and hazards such as unprotected heights and open moving machine parts; and Plaintiff requires use of a cane to stand and ambulate (Tr. 16).   The ALJ found Plaintiff is unable to perform any past relevant work (Tr. 21).

After this finding, the ALJ went to the fifth step, where the ALJ also considered Plaintiff's RFC, age, education, and past work experience, as well as testimony from the vocational expert, to find that Plaintiff is able to perform other jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from July 7, 2017, the alleged onset date, through June 3, 2019, the date of the ALJ's decision (Tr. 23).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 237-38).   The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

<u>CONCLUSIONS OF LAW</u>

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695 (6th Cir. 1993); <u>Wyatt v. Sec'y of Health & Human Servs.</u>, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. <u>Landsaw v. Sec'y of Health & Human Servs.</u>, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." <u>Cotton</u>, 2 F.3d at 695 (quoting <u>Casey v. Sec'y of Health & Human Servs.</u>, 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." <u>Cohen v. Sec'y of Health & Human Servs.</u>, 964 F.2d 524, 528 (6th Cir. 1992) (quoting <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; <u>Cline v. Comm'r of Soc. Sec.</u>, 96 F.3d 146, 148 (6th Cir. 1996); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695-696 (6th Cir. 1993).

4

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 *et seq*, 1381 *et seq*. The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Challenge to Finding No. 10: Jobs in Sufficient Numbers

1.  Arguments of the Parties

Plaintiff first argues "[t]here was not substantial evidence supporting the ALJ's finding that jobs existed in the regional or national economy consistent with the adopted residual functional capacity or in sufficient numbers" (DN 17-1 PageID 733).   Plaintiff begins by attacking the potential jobs proffered by the vocational expert, as "each of the[] job descriptions have not been updated in decades" (Id. at PageID 734).   Plaintiff relies upon the Occupational Information Network ("O*NET") to argue that the proffered jobs are a higher Specific Vocational Preparation than detailed in the Dictionary of Occupational Titles ("DOT") (Id.).   "Based on the DOT being obsolete and the fact that current summaries provided by O*NET are so contradictory, there is simply no substantial evidence supporting the [vocational expert]'s testimony as reliable regarding these jobs" (Id.).   Moreover, Plaintiff claims "all of these jobs *combined* total just 1,500" regionally (Id. at PageID 734-35) (emphasis in original).   Relying on the Sixth Circuit's findings in Cunningham v. Astrue, 360 F. App'x 606 (6th Cir. 2010), and the undersigned's own holdings,[4] the "even more extreme" lack of regional jobs here requires remand (Id. at PageID 735).   Finally, Plaintiff contends that vocational experts routinely use Skilltran and Department of Labor statistics for their information, and Skilltran utilizes O*NET for its statistics, thus O*NET is "a more updated sources for vocational information" (Id. at PageID 736).   "Therefore, there was not substantial evidence supporting the ALJ's finding that jobs existed in the regional or national economy consistent with the adopted residual functional capacity or in sufficient numbers (Id.).

---

4   Johnson v. Berryhill, No. 4:16-CV-00106-HBB, 2017 U.S. Dist. LEXIS 86558 (W.D. Ky. June 6, 2017); Moore v. Berryhill, No. 4:17-CV-00091-HBB, 2018 U.S. Dist. LEXIS 41883 (W.D. Ky. Mar. 14, 2018); Hamilton v. Berryhill, 4:17-CV-00053-HBB, 2018 U.S. Dist. LEXIS 41532 (W.D. Ky. Mar. 14, 2018).

In contrast, Defendant claims that "the ALJ asked a hypothetical question that matched the RFC [and t]he ALJ's hypothetical question to the vocational expert . . . properly excluded limitations that were not credibly supported by the evidence" (DN 22 PageID 764) (citations omitted).   Defendant frames Plaintiff's contentions as "whether the 75,000 jobs identified is sufficient to meet the Commissioner's burden at step five of the sequential evaluation process[,]" and answers the question in the affirmative (Id. at PageID 764-65).   While noting that "[w]hat constitutes a significant number of jobs is to be determined on a case-by-case basis[,]" Defendant cites to precedent in this Circuit to demonstrate instances where 6,000 or fewer jobs nationally may still represent a significant number (Id. at PageID 765) (citing Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988); Taskila v. Comm'r of Soc. Sec., 819 F.3d 902, 905 (6th Cir. 2016)). Moreover, Defendant asserts that the Sixth Circuit has already rejected Plaintiff's "percentage" style approach to job opportunities (Id. at PageID 767) (citing Hall, 837 F.2d at 275) and "Plaintiff has waived this argument by not questioning the [vocational expert] about [the availability of jobs nationally or regionally] at the administrative hearing" (Id.) (citing McClanahan v. Comm'r of Soc. Sec., 474 F.3d 830, 837 (6th Cir. 2006)).

Next, Defendant proffers a three-prong analysis explaining that (1) Plaintiff waived the issue of whether the jobs were obsolete or not present in O*NET (Id. at PageID 769-72); (2) the DOT is the favored source for disability adjudication, in comparison to O*NET (Id. at PageID 772-75); and (3) the DOT jobs identified by the vocational expert were not obsolete because they "crosswalk" to O*NET (Id. at PageID 775-76).   Finally, Defendant concludes by asserting that Plaintiff's reliance on Cunningham is "inapposite" based upon the Sixth Circuit's findings in O'Neal II v. Comm'r of Soc. Sec., 799 F. App'x 313 (6th Cir. Jan. 7, 2020) (Id. at PageID 777-79).

Defendant quotes O'Neal at length in asserting that "no binding post-Cunningham decision from [the Sixth Circuit] has remanded to the Commissioner based on a vocational expert's reliance on the DOT" (Id. at PageID 779) (quoting O'Neal, 799 F. App'x at 317).   Thus, Defendant contends that the ALJ reasonably and properly relied upon uncontested testimony by the vocational expert, and Plaintiff's current arguments should be viewed as unavailing.   Thus, under Defendant's view, the ALJ's determination should be found be supported by substantial evidence.

2.   Discussion

The burden of proof does not shift to the Commissioner to establish a claimant's ability to work until the fifth step of the evaluation.   Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990).   At the fifth step, it is the Commissioner's burden to show that there exists a significant number of jobs in the local, regional and national economies that a claimant can perform, given their RFC.   See Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).   The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy which plaintiff can perform considering the combination of their limitations.   See Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Davis v. Sec'y of Health & Human Servs., 915 F.2d 186, 189 (6th Cir. 1990); Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).   In making a determination at step five of the sequential evaluation process, the ALJ must consider a claimant's age, education, past relevant work experience and RFC.   20 C.F.R. §§ 404.1520(f), 416.920(f).

A vocational expert's testimony can constitute substantial evidence to support the Commissioner's finding that a plaintiff is capable of performing a significant number of jobs

existing in the local, regional, and national economies, Bradford v. Sec'y, Dep't. of Health & Human Servs., 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), so long as a vocational expert's testimony is based on a hypothetical question which accurately portrays the claimant's physical and mental impairments.  Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).  If the ALJ comes forward with evidence of job availability, the claimant must rebut that they can perform the identified job.  Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*).  The hypothetical question is not erroneous where at least one doctor substantiates the information contained therein.  Hardaway v. Sec'y of Health & Human Servs., 823 F.2d 922, 927-28 (6th Cir. 1987) (per curiam).  Moreover, no requirement exists that the ALJ's hypothetical question to the vocational expert reflect the claimant's unsubstantiated complaints.  Id.

Here, because the vocational expert was able to identify three positions which, according to the Dictionary of Occupational Titles ("DOT"), provided a significant number of jobs which Plaintiff could perform, the Commissioner met his burden (Tr. 22, 62).  *See* Blacha v. Sec'y of Health & Human Servs., 823 F.2d 922, 928 (6th Cir. 1987).  These three positions are document preparer (DOT code 249.587-018), with approximately 45,000 jobs nationally; telephone quotation clerk (DOT code 237.367-046), with 20,000 jobs nationally; and table worker (DOT code 739.687-182), with 10,000 jobs nationally (Tr. 22, 62).

The vocational expert identified a significant number of jobs that plaintiff could perform, which is the legal standard that the Commissioner must meet.  *See e.g.*, McCormick v. Sec'y of Health & Human Servs., 861 F.2d 998, 1000, 1002 (6th Cir. 1988) (4,000 to 5,000 jobs in Michigan); Hall v. Bowen, 837 F.2d 272, 274 (6th Cir. 1988) (1,350 to 1,800 jobs in the nine county area of Dayton, Ohio); *accord* Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474,

9

1479-80 (9th Cir. 1989) (citing Hall) (1,255 jobs in Los Angeles/Orange County); Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988) (citing Hall) (500 jobs in St. Louis area); Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (174 jobs locally, 1,600 jobs in Georgia, and 80,000 nationally).   It is for the Commissioner to evaluate the reliability of the vocational expert's testimony and to determine what constitutes a significant number.   *See* Hall, 837 F.2d at 275.

As for Plaintiff's argument regarding the obsolescence of the DOT, Plaintiff's argument is unavailing.   The Sixth Circuit, albeit in an unpublished opinion, previously cautioned that "*common sense dictates*" when job descriptions in the DOT "appear obsolete, a more recent source of information should be consulted."   Cunningham v. Astrue, 360 F. App'x 606, 615 (6th Cir. 2010) (emphasis added).   Several district courts in the Sixth Circuit followed Cunningham and remanded matters to the Commissioner when the vocational expert's reliance on potentially obsolete job descriptions from the DOT raised sufficient doubt whether substantial evidence supported the ALJ's determination at the fifth step.   *See e.g.* Wright v. Berryhill, No. 4:18-CV-00021, 2019 WL 498855, at *9 (W.D. Ky. Feb. 8, 2019); Westmoreland v. Berryhill, No. 3:17-cv-00096, 2018 WL 1522118, at *4 (S.D. Ohio Mar. 28, 2018); Rollston v. Comm'r of Soc. Sec., No. 1:16-CV-168, 2016 WL 6436676, at *4 (W.D. Mich. Nov. 1, 2016).   Other district courts within the Sixth Circuit criticized Cunningham's reasoning and declined to follow its holding.   *See e.g.* Kidd v. Berryhill, No. 5:17-CV-420-REW, 2018 WL 3040894, at *7-10 (E.D. Ky. June 19, 2018); Montano v. Comm'r of Soc. Sec., No. 1:13-cv-70, 2014 WL 585363, at *15 (S.D. Ohio Feb. 14, 2014); Belew v. Astrue, No. 2:11-107-DCR, 2012 WL 3027114, at *9-10 (E.D. Ky. July 24, 2012).

In a recently issued unpublished order, the Sixth Circuit attempted to resolve the apparent confusion among some of the district courts.   O'Neal v. Comm'r of Soc. Sec., 799 F. App'x 313,

316-18 (6th Cir. 2020).   Because the regulations continue to recognize the DOT as a source of reliable information and the claimant did not to cross-examine the vocational expert about the DOT job descriptions when he had the opportunity, the Sixth Circuit held the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that the claimant was able to perform work that existed in significant numbers in the national economy.   Id.

Applying the holding in O'Neal to the circumstances before the Court, Plaintiff did cross-examine the vocational expert (Tr. 63-65).   But Plaintiff failed to cross-examine the vocational expert about the obsolescence of the DOT's descriptions for these three jobs (Id.).   Plaintiff did briefly, in a closing argument, post whether the job numbers "rise to the level of sufficient numbers in the national economy[,]" (Tr. 66-67), but the argument before the ALJ never mentioned O*NET or obsolescence, nor were these issues presented to the vocational expert.

While Plaintiff cites three cases in which the undersigned remanded proceedings to the Commissioner for further proceedings (DN 17-1 PageID 735), all three of those cases pre-date O'Neal.   As the Sixth Circuit has provided more clarity on the applicable law following Cunningham, Plaintiff's use of the undersigned's cases is unpersuasive.

Considering the holding in O'Neal, the vocational expert's testimony, in terms of applicable jobs, constitutes substantial evidence to support ALJ's finding that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (Tr. 21-22).

Of note, Plaintiff did ask the vocational expert about the process used to determine the number of jobs in the national economy, to which the vocational expert replied, "I start off with the, the US Bureau of Labor and Statistics, and then I use a program called Job Browser Pro, SkillTRAN, to determine job estimates for DOT classifications" (Tr. 64).   Plaintiff's cross-

examination concluded by asking whether the job numbers had been reduced in any way, which the vocational expert stated, "I didn't reduce the numbers that I had found in Job Browser Pro, SkillTRAN" (Tr. 65).   However, this colloquy does not equate to the cross-examination of a vocational expert about O*NET or the obsolescence of the DOT.   Thus, this line of questioning does not rise to the level necessary to preserve the issues for this Court.

Finally, as for Plaintiff's percentage argument for regional jobs, Defendant has cited to binding precedent contrary to Plaintiff's point.   The Sixth Circuit has previously held:

> As the court stated in *Walker v. Mathews*, 546 F.2d 814, 819 (9th Cir. 1976), "Congress did not intend to foreclose a claimant from disability benefits on the basis of the existence of a few isolated jobs."   However, when there is testimony that a significant number of jobs exists for which a claimant is qualified, *it is immaterial that this number is a small percentage of the total number of jobs in a given area.*

Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988) (emphasis added).   This directly undercuts Plaintiff's argument.   As such, Plaintiff's argument is unavailing.

Therefore, after reviewing the parties' arguments, the administrative record, and the applicable case law, the ALJ's determination at the step five analysis is supported by substantial evidence and complies with applicable law.

Challenge to Finding No. 5: RFC Determination

1.   Arguments of the Parties

Plaintiff's next claim contends that "[s]ubstantial evidence did not support the ALJ's sedentary duty RFC" (DN 17-1 PageID 736).   More specifically, "[t]he ALJ failed to recognize the limiting effects of Mr. Buckman's severe conditions as supported by objective evidence,

including medical records and a longstanding history of osteoarthritis/bursitis of the hips and lumbar and thoracic spine degenerative disc disease" (Id.).   Plaintiff compares the ALJ's analysis of Listing 1.02, *Major dysfunction of a joint(s) (due to any cause)*, where the ALJ found that Plaintiff did not meet the criteria of having an "inability to ambulate effectively," while the ALJ later crafted an RFC determination stating that Plaintiff "requires use of a cane to stand and ambulate" (Id. at PageID 736-37) (citing Tr. 15-16).   Additionally, when evaluating Plaintiff's complaints of pain, Plaintiff asserts that "the ALJ erroneously concluded that the intensity, persistence and limiting effects of Mr. Buckman's pain symptoms were not consistent with medical evidence and other evidence" (Id. at PageID 738) (citing Tr. 17) (quotation mark omitted). "Even the ALJ acknowledged the limited scope of Mr. Buckman's ability by finding that he was only capable of a subset of sedentary work, which could be accomplished with the use of a cane to stand and ambulate, along with additional limitation[,]" and Plaintiff claims that "[n]o reasonable person based on the evidence would find that Mr. Buckman could perform at this RFC level on a consistent basis sufficient to hold a full-time job" (Id.) (citing Tr. 16).   After discussing Plaintiff's medical records and testimony which would, in his view, substantiate the assertion that "[i]f Mr. Buckman were to be employed in even a sedentary job, it is certain that his osteoarthritis, degenerative disc disease, and pain levels would cause many more absences than allowable by an employer" (Id. at PageID 738-39).   As Plaintiff concludes that the medical evidence and testimony show that he cannot sustain a full-time job, even at the current RFC, he reasons that "the ALJ erred in his determination of Mr. Buckman's RFC and [the ALJ's] opinion should be reversed" (Id. at PageID 740).

Defendant, in turn, asserts that the ALJ's RFC determination "was reasonable and supported by substantial evidence" (DN 22 PageID 785).   Defendant's argument on this issue is combined with its argument to whether the ALJ properly considered the opinions of Dr. Oliver and whether the ALJ properly considered the medical record in making the <u>Drummond</u> determination (<u>Id.</u> at PageID 785-96), so the undersigned will cite to the relevant arguments for each issue.   When addressing Plaintiff's arguments regarding the <u>Drummond</u> and AR 98-4 analysis, which is discussed in a later portion of this opinion, Defendant noted that the state agency physicians, at the initial and reconsideration stages, opined restrictions which were drawn from the previous administrative law judge's opinion (<u>Id.</u> at PageID 791-92).   The ALJ found these assessments to be persuasive, especially as the state agency physicians "are familiar with the Social Security Administration's disability programs and are considered experts in the field of disability evaluation" (<u>Id.</u> at PageID 792-93).   However, Defendant noted that the ALJ specifically found that Plaintiff was prescribed a cane in March 2019, absent any observations by treating providers showing necessity of the cane, but the ALJ still included "requires use of a cane to stand and ambulate" into the RFC, which was not included in the state agency physicians' assessments (<u>Id.</u> at PageID 793) (citing Tr. 16, 18).   Defendant frames this inclusion as "subjecting the assessment of reviewing doctors to proper scrutiny" (<u>Id.</u>).

2.   Discussion

The RFC determination is the Administrative Law Judge's ultimate determination of what a claimant can still do despite their physical and mental limitations.   20 C.F.R. §§ 404.1545(a), 404.1546(c).   The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record.   20 C.F.R. §§ 404.1529,

404.1545(a)(3), 404.1546(c).   Thus, in making the RFC determination the Administrative Law

Judge must necessarily evaluate the persuasiveness of the medical source statements in the record

and assess the claimant's subjective allegations.   20 C.F.R. §§ 404.1520c, 404.1529(a).

Listing 1.00 defines "inability to ambulate effective" as:

> [A]n extreme limitation of the ability to walk; *i.e.*, an impairment(s)
> that interferes very seriously with the individual's ability to
> independently initiate, sustain, or complete activities.   Ineffective
> ambulation is defined generally as having insufficient lower
> extremity functioning (see 1.00J) to permit independent ambulation
> without the use of a hand-held assistive device(s) that limits the
> functioning of both upper extremities.   .  .  .   To ambulate
> effectively, individuals must be capable of sustaining a reasonable
> walking pace over a sufficient distance to be able to carry out
> activities of daily living.   They must have the ability to travel
> without companion assistance to and from a place of employment or
> school.   Therefore, *examples of ineffective ambulation include*, but
> are not limited to, *the inability to walk without the use of* a walker,
> two crutches *or two canes*, the inability to walk a block at a
> reasonable pace on rough or uneven surfaces, the inability to use
> standard public transportation, the inability to carry out routine
> ambulatory activities, such as shopping and banking, and the
> inability to climb a few steps at a reasonable pace with the use of a
> single hand rail.   The ability to walk independently about one's
> home without the use of assistive devices does not, in and of itself,
> constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.00(B)(2)(b)(1)-(2) (emphasis added).

Here, the ALJ, at step three of the sequential analysis, the ALJ found that Listing 1.02

"requires involvement of one major peripheral weight-bearing joint resulting in inability to

ambulate effective as defined in 1.00B2b[, and] . . . the evidence does not demonstrate that

[Plaintiff] has the degree of difficulty in ambulating as defined in 1.00B2b" (Tr. 15).   In the RFC

15

determination, the ALJ noted that Plaintiff "stated he uses a cane for walking and balancing and that he uses the cane all the time for the past couple of months" (Tr. 17).   The ALJ also considered evidence in the record which stated that Plaintiff "sits, moves, stands easily" (Id.) (citing Tr. 542, 544, 548).   Finally, the ALJ concluded, "While [Plaintiff] was prescribed a cane in March 2019 by his primary care provider, there are no observations by treating providers demonstrating this is medically necessary (such as unstable or abnormal gait, coordination, or balance).   Nonetheless, the [ALJ] has afforded [Plaintiff] use of a cane in the residual functional capacity" (Tr. 18) (citing 327, 339, 345, 348, 357-60, 372, 377, 384, 393, 402, 407, 412, 416, 419, 421, 424, 426, 444, 449, 454, 458-59, 463, 468, 473, 478, 482-83, 488, 491, 493, 498, 503, 508, 513, 518, 523, 529, 543-44, 556, 561, 573, 578, 583, 588, 593, 599, 605, 611, 617, 623, 528, 639, 648-49).

Looking to the medical evidence and the ALJ's reasoning, the ALJ has provided ample evidence to support the conclusion that there were no observations from treating providers requiring a cane as a medical necessity.   However, after taking Plaintiff's testimony and treating provider's prescription for a cane, the ALJ took that information into account and crafted an RFC that aligns with how Plaintiff is currently ambulating.   Moreover, Plaintiff has not presented any evidence in this argument to show that he uses a walker, two crutches or two canes, which were examples explicitly provided by Listing 1.00.   Instead, Plaintiff has simply pointed to the ALJ's consideration of his testimony and the purported "inconsistency" by finding that Plaintiff did not meet the criteria of "inability to ambulate effectively."   These findings are not contradictory or inconsistent with each other, nor does the information presented show anything less than the ALJ's decision being supported by substantial evidence and complies with applicable law.

16

As for the argument pertaining to the ALJ's assessment of Plaintiff's symptoms and pain, in assessing a claimant's RFC, the administrative law judge must necessarily consider the subjective allegations of the claimant and make findings.   20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p.   A claimant's statement that they are experiencing pain or other symptoms will not, taken alone, establish that they are disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged.   20 C.F.R. §§ 404.1529(a), 416.929(a).   In determining whether a claimant suffers from debilitating pain and/or other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies.   First, the administrative law judge must examine whether there is objective medical evidence of an underlying medical condition.   If there is, then the administrative law judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain."   Id.   When, as in this case, the reported pain and/or other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the administrative law judge will consider other information and factors which may be relevant to the degree of pain alleged.   20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

A claimant's level of daily activity is a factor which the administrative law judge may consider in determining the extent to which pain is of disabling severity.   20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Sec'y of Health & Human Servs., 927 F.2d 228, 231 (6th Cir. 1990) (As a matter of law,

17

the administrative law judge may consider household and social activities in evaluating complaints of disabling pain.).   The frequency that a claimant has sought treatment for the allegedly disabling impairment(s) is a factor that may be considered in assessing their subjective complaints.   20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v).   Also considered is whether there are "any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . ."   20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Finally, the administrative law judge may consider the medication used to alleviate the alleged pain or other symptoms.   20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).   Mild medication and infrequency of dosages taken by the claimant do not bear out claims of debilitating pain.  *See* Maher v. Sec'y of Health & Human Servs., 898 F.2d 1106, 1109 (6th Cir. 1989).

Here, the ALJ found from the medical record and Plaintiff's testimony that Plaintiff does not suffer pain to the extent he testified (Tr. 17).   In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to assess the degree to which Plaintiff suffers from the pain and other symptoms.   Since tolerance of pain and/or other symptoms is a highly individualized matter, the conclusion of the administrative law judge, who has the opportunity to observe a claimant's demeanor, "should not be discharged lightly." Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984) (citing Beavers v. Sec'y of Health, Educ. & Welfare, 577 F.2d 383 (6th Cir. 1978)).

The ALJ recounted Plaintiff's testimony at the administrative hearing, specifically Plaintiff's pain and sleeping habits (Tr. 16-17).   However, the ALJ noted that Plaintiff "ha[d] not generally received the type of medical treatment one would expect for a totally disabled individual" (Tr. 17).   The ALJ discussed Plaintiff's visits to his treating provider, as well as a pain

management provider, where Plaintiff had previously received medication management and injections (Id.).   Thereafter, the ALJ stated that Plaintiff reported that his medication allowed him to properly care for his son and grandmother, his low back pain was adequately controlled with medication and was no longer interfering with daily functions, and "significant[] improve[ment]" from a lumbar branch block and bilateral SI joint injection (Id.).   In the following paragraph of the determination, the ALJ noted MRI findings of "mild degenerative change at the L4-5 disc level but was otherwise a negative study" and "no spinal stenosis or nerve root compression" (Id.) (citing 542, 544, 548).   Moreover, the ALJ stated that the exam records form Plaintiff's pain management provider showed normal gait and sensation and no nerve root impingement (Tr. 17-18).   Finally, as previously noted, the ALJ extensively detailed that there were "no observations by treating providers demonstrating [prescribing use of a cane] is medically necessary" (Tr. 18).

Plaintiff cites to a singular document, detailing a visit with his treating provider, and his testimony at the administrative hearing as a means of demonstrating that Plaintiff's "pain symptoms were not consistent with medical evidence and other evidence" (DN 17-1 PageID 738-39) (citing Tr. 542).   Specifically, Plaintiff's reference to the medical documentation only mentions a singular instance of Plaintiff's complaints of low back pain (Id.).   Interestingly, the ALJ's determination specifically cites to the document and page cited by Plaintiff.   Thereafter, Plaintiff included one sentence about needing a cane for ambulation due to hip pain, but Plaintiff did not cite any documentation for this assertion, in addition to the cane use discussion above.

Thus, this argument does not rise to the level necessary to discharge the ALJ's determination.   The undersigned concludes that the ALJ's findings are supported by substantial evidence and fully comport with applicable law.

19

Challenge to Finding No. 4: Listing 1.02

1. Arguments of the Parties

Third, Plaintiff claims that the ALJ's determination that Plaintiff did not meet Listing 1.02 is not supported by substantial evidence (DN 17-1 PageID 740).   Instead, Plaintiff contends that he meets the Listing as a result of his "extensive physical limitations" from "his many conditions, including his severe degenerative disc disease, osteoarthritis, and bursitis of the hips" (Id.). Plaintiff argues that "the ALJ seems to concede that Mr. Buckman did satisfy the requirements of the first section of [Listing] 1.02 when he state that 'in this case, the evidence does not demonstrate that the claimant has the degree of difficulty in ambulating as defined in 1.00B2b'" (Id. at PageID 740-41) (quoting Tr. 15).   Plaintiff believes the ALJ's findings at this step was done "without any analysis at all . . . aside from simply stating that he did not meet the requirement of an inability to ambulate effectively" (Id. at PageID 741).   "The ALJ should have conducted a more thorough analysis of this issue and not have dismissed it with no discussion at all" (Id.).   As such, Plaintiff contends that the ALJ's finding is not supported by substantial evidence and should be reversed or remanded (Id. at PageID 741-42).

Defendant disputes Plaintiff's argument by claiming, "The ALJ properly determined that Plaintiff's impairments did not meet or medically equal Listing 1.02" (DN 22 PageID 782) (capitalizations omitted).   Defendant states that it is Plaintiff's burden to show that he has met or is medially equal to the listing's criteria, and this burden requires proving each requirement of the listing's criteria (Id.).   Moreover, "[b]ecause an affirmative finding at step three means that the claimant is *per se* disabled, the criteria are substantial—and indeed are higher than the standard for disability under the Social Security Act" (Id.).   Defendant thoroughly recounts the ALJ's

20

decision and the requirements of the listing (Id. at PageID 783-84).   When reviewing the evidence,

Defendant states that "[t]he record is devoid of any medical opinion that Plaintiff had an

impairment or combination of impairments that met or medically equaled Listing 1.02" (Id. at

PageID 784).   "This is important because an ALJ must rely upon a medical opinion in order to

determine medical equivalency to a Listing" (Id.) (citing 20 C.F.R. § 404.1526).   Moreover,

"[b]oth state agency reviewing physicians . . . explicitly concluded that Plaintiff's impairments did

not meet or medically equal any Listing" (Id.) (citing Tr. 121, 155).   Therefore, Defendant states

that the ALJ's decision is supported by "the only opinion evidence of record regarding the

Listings" (Id. at PageID 785).

   2.   Discussion

   At the third step, a claimant will be found disabled if their impairment meets or medically

equals one of the listings in the Listing of Impairments.   20 C.F.R. § 404.1520(a)(4)(iii); Turner

v. Comm'r of Soc. Sec., 381 F. App'x 488, 491 (6th Cir. 2010).   The Listing of Impairments, set

forth in Appendix 1 to Subpart P of the regulations, describes impairments the Social Security

Administration considers to be "severe enough to prevent an individual from doing any gainful

activity, regardless of his or her age, education, or work experience."   20 C.F.R. § 404.1525(a).

   Each listing specifies "the objective medical and other findings needed to satisfy the criteria

of that listing."   20 C.F.R. § 404.1525(c)(3).   A claimant must satisfy all the criteria to "meet"

the listing and be deemed disabled.   See 20 C.F.R. § 404.1525(c)(3) and (d); Hale v. Sec'y of

Health & Human Servs., 816 F.2d 1078, 1083 (6th Cir. 1984).[5]   However, a claimant is also

---

5   An Administrative Law Judge will find that an impairment "*meets* the requirements of a listing when it satisfies
all the criteria of that listing."   20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3) (emphasis in original); *see* Hale v.
Sec'y of Health & Human Servs., 816 F.2d 1078, 1083 (6th Cir. 1984).

deemed disabled if their impairment is the medical equivalent of a listing.   20 C.F.R. § 404.1520(a)(4)(iii); <u>Turner</u>, 381 F. Appx. at 491.[6]   Medical equivalence means "at least equal in severity and duration to the criteria of any listed impairment."   20 C.F.R. § 404.1526(a).   "An administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment."   <u>Reynolds v. Comm'r Soc. Sec.</u>, 424 F. App'x 411, 415 (6th Cir. 2011).   Additionally, the administrative law judge looks to the opinions of the state agency medical advisors and/or the opinion of a testifying medical expert for guidance on the issue of whether the claimant's impairment is the medical equivalent of a listing.   *See* 20 C.F.R. § 404.1526(c) and (d); SSR 17-2p; <u>Deters v. Sec'y of Health, Educ. & Welfare</u>, 789 F.2d 1181, 1186 (5th Cir. 1986).

As was discussed in the previous argument, Listing 1.00 defines "inability to ambulate effective" as "an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities."   20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.00(B)(2)(b)(1).   The Listing goes on to discuss examples of ineffective ambulation, including "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail."   <u>Id.</u> at Listing 1.00(B)(2)(b)(2).   The ALJ

---

6   An Administrative Law Judge will find that an impairment is "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment."   20 C.F.R. §§ 404.1526(a), 416.926(a).

found that Listing 1.02 "requires involvement of one major peripheral weight-bearing joint resulting in inability to ambulate effective as defined in 1.00B2b[, and] . . . the evidence does not demonstrate that [Plaintiff] has the degree of difficulty in ambulating as defined in 1.00B2b" (Tr. 15).   The ALJ cited to a plethora of documentation to support the conclusion that there were no observations that prescribing the use of a cane was medically necessary (Id.).   As previously concluded, the ALJ's determination appears to take into consideration Plaintiff's testimony and treating provider's prescription for a cane, thereby crafted an RFC that aligns with how Plaintiff is currently ambulating.   Moreover, Plaintiff has not presented any evidence in this argument to show that he uses a walker, two crutches or two canes, which were examples explicitly provided by Listing 1.00.   Ultimately, the undersigned concluded that the ALJ's determination about effective ambulation was supported by substantial evidence and comports with applicable law.

As for the other examples of ineffective ambulation, Plaintiff reiterates subjective complaints of difficulty walking and "feel[ing] like his legs are going to give out" (DN 17-1 PageID 741) (citing Tr. 544).   Plaintiff also attempts to discuss his treating provider's RFC which noted that Plaintiff could not walk without rest or severe pain (Id.) (citing Tr. 430).   Similar to Plaintiff's last argument, the ALJ specifically cited to Tr. 544 when discussing Plaintiff's low back pain.   In the determination, the ALJ noted MRI findings of "mild degenerative change at the L4-5 disc level but was otherwise a negative study" and "no spinal stenosis or nerve root compression" (Tr. 17) (citing 542, 544, 548).   Moreover, the ALJ stated that the exam records form Plaintiff's pain management provider showed normal gait and sensation and no nerve root impingement (Tr. 17-18).

Finally, the RFC questionnaire cited by Plaintiff was completed by Dr. Randall Oliver (Tr. 429-32).   Dr. Oliver remarks that Plaintiff can walk one city block without rest or severe pain, can sit for two hours at one time before needing to get up, and can stand for only thirty minutes before having to sit down (Tr. 430).   Moreover, Dr. Oliver checked lines on the questionnaire which noted that Plaintiff can sit and stand/walk for less than two hours total in an eight-hour workday, with Plaintiff having to take a ten minute walk every six minutes and fifteen minute unscheduled breaks every two hours (Tr. 431).   The ALJ found that Dr. Oliver's opinion was unpersuasive, as the opinion is "internally inconsistent" (the sit, stand, and walk findings noted above) and it is "not well supported by Dr. Oliver's own examinations with [Plaintiff] or the overall level of treatment he has provided" (Tr. 20).   Additionally, the ALJ noted that "the opinion is not consistent with the other evidence of record, including exams with numerous other providers which have been largely within normal limits" (Id.).   In a later portion of his argument, which is discussed below, Plaintiff challenges the weight given to Dr. Oliver's opinion.   However, as discussed below, the ALJ's finding of persuasiveness to Dr. Oliver's opinion is supported by substantial evidence.

Finally, the state agency reviewing physicians remarked that Plaintiff did not meet or medically equal any listing (Tr. 99-100, 113-14, 131-32, 147-48).   These decisions are persuasive when considering whether a claimant meets or medically equals a listing.   *See* 20 C.F.R. § 404.1526(c) and (d); SSR 17-2p; Deters v. Sec'y of Health, Educ. & Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986).   Plaintiff does not provide any medical opinion, nor can the undersigned find one in the administrative record, that details that Plaintiff meets or medically equals Listing 1.02 or any other listing.

Therefore, the ALJ's determination at step three of the sequential analysis is supported by substantial evidence and comports with applicable law.   As such, Plaintiff's arguments to this finding are unavailing.

Challenge to Finding No. 4: "Controlling Weight" to Treating Provider

1. Arguments of the Parties

Plaintiff's penultimate argument contends that"[t]he ALJ erred in not giving controlling weight to the opinion of Mr. Buckman's treating provider, Dr. Randall Oliver, who outlined limitations that would eliminate even sedentary work" (DN 17-1 PageID 742) (citing Tr. 429-32). Plaintiff opines that "Dr. Oliver's opinion was honest and transparent" by not including limitations for reaching, handling, fingering, or "his ability to look down/turn his head/look up" and by stating that Plaintiff is able to handle moderate stress (Id.) (citing Tr. 430-32).   Moreover, Dr. Oliver has been Plaintiff's "treating pain management specialist . . . since prior to 2015 . . ." (Id.).   Plaintiff contends that the ALJ had failed to provide Dr. Oliver's opinion "more weight than the opinion of a non-treating physician" and, instead, did not have a physical examination done and relied upon the non-examining state agency reviewing physician (Id. at PageID 743) (citing Tr. 20). Additionally, Plaintiff asserts that the ALJ did not mention or discuss the factors of 20 C.F.R. § 404.1527(d)(2) when opting to not give Dr. Oliver controlling weight (Id. at PageID 743-44). Plaintiff concludes by discussing his medical records, which he classifies as "clearly consistent with Dr. Oliver's RFC that was submitted, as well as Mr. Buckman's testimony" (Id. at PageID 745).   Therefore, Plaintiff argues "the ALJ should have afforded great weight to the opinion of Dr. Oliver and the ALJ failed to articulate sufficient reason for affording critical portions of his opinion little weight" (Id.).   Thus, reversal or remand is required (Id.).

Defendant counters Plaintiff's argument by asserting that the ALJ's RFC determination "was reasonable and supported by substantial evidence" (DN 22 PageID 785).   As noted above, Defendant's argument on this issue is combined with its argument to whether the ALJ properly crafted an RFC suitable for Plaintiff and whether the ALJ properly considered the medical record in making the Drummond determination (Id. at PageID 785-96), so the undersigned will cite to the relevant arguments for each issue.   Defendant contends that "the ALJ appropriately discounted the opinions of Dr. Randall Oliver, and instead, relied on the opinions of state agency reviewing physicians . . . in crafting Plaintiff's RFC" (Id. at PageID 785).   Defendant begins by noting that Plaintiff's citation to 20 C.F.R. § 404.1527 is the incorrect regulation because the regulations for evaluating medical opinion evidence changed on March 27, 2017 (Id. at PageID 786) (citing 20 C.F.R. § 404.1520c).   Defendant, utilizing the post-March 2017 regulations, states that no specific evidentiary weight will be assigned to any medical opinions, including controlling weight, and instead, the ALJ should articulate the supportability and consistency in the medical opinions to determine the persuasiveness (Id. at PageID 786-87) (citing 20 C.F.R. § 404.1520c(a) and (b)(2)).   Looking to the findings as to Dr. Oliver, Defendant contends that the evaluation by the ALJ was proper, and the ALJ noted that the "assessment was unpersuasive for a myriad of reasons" (Id. at PageID 787-88).   Moreover, Defendant contends that "Dr. Oliver's checkboxes and circled responses were conclusory and devoid of supporting explanation[;]" thus, "his opinion was not supported by citation to objective evidence, and . . . was not persuasive" (Id. at PageID 790).

2.   Discussion

To begin, the Court notes that Defendant is correct regarding which regulations will apply. The new regulations for evaluating medical opinions are applicable to Plaintiff's case because he

26

filed his applications after March 27, 2017 (Tr. 10, 239, 241).   *See* 20 C.F.R. §§ 404.1520c, 416.920c.   The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[7] even if it comes from a treating medical source.   20 C.F.R. §§ 404.1520c(a), 416.920c(a).[8]   Instead, administrative law judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation.   20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).   The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors.   20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Of these five factors, the two most important are supportability and consistency.   20 C.F.R. §§ 404.1520c(a) and (b)(2), 416.920c(a) and (b)(2).   Further, the regulation requires administrative law judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion.   20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).   Notably, under the regulations administrative law judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion.   20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Here, the ALJ explicitly noted that the new regulations apply by stating, "The undersigned has also considered the medical opinion(s) and prior administrative medical finding(s) in

---

7   At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings."   20 C.F.R. §§ 404.1513a(a)(1), 416.913a(a)(1). Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation.   20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

8   The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. § 404.1527(c)(2).

accordance with the requirements of 20 CFR 404.1520c and 416.920c" (Tr. 16).   Later in the determination, the ALJ proffered a similar notation by stating, "As for medical opinion(s) and prior administrative medical finding(s), we will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those form your medical sources" (Tr. 19).   When considering Dr. Oliver's medical opinion, the ALJ did not find any specific evidentiary weight (Tr. 20).   Instead, the ALJ found Dr. Oliver's opinion to be "unpersuasive" as the result of "internally inconsistent" findings and that the opinion was "not well supported by Dr. Oliver's own examinations with [Plaintiff] or the overall level of treatment he has provided.   Further, the opinion is not consistent with the other evidence of record, including exams with numerous other providers which have been largely within normal limits" (Id.).

As Plaintiff's entire argument to this finding is premised upon the incorrect regulations, Plaintiff's arguments are unavailing.   The ALJ complied with the proper, applicable regulations by determining the persuasiveness of the medical opinions in the record and opining articulate reasons for why Dr. Oliver's opinion was unpersuasive (Id.).   The ALJ's opinion addressed the factors of supportability and consistency when reviewing Dr. Oliver's opinion (Id.), which are considered the two most important factors.   20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).

As the ALJ's determination follows the proper regulations, determines persuasiveness rather than assigning weight, and articulates clear and rational reasons for finding Dr. Oliver's opinion unpersuasive, the ALJ's determination is supported by substantial evidence and comports with applicable law.

Challenge to AR 98-4 and *Drummond* Determination

1. Arguments of the Parties

Plaintiff's final claim centers upon the ALJ's consideration of <u>Drummond</u> and whether Plaintiff's condition had deteriorated since the date of Plaintiff's prior disability determination (DN 17-1 PageID 745).   Here, Plaintiff states, "There is evidence demonstrating that M[r]. Buckman's condition has deteriorated since the date of the prior binding ALJ decision dated July 6, 2017" (<u>Id.</u>).   Plaintiff refers to his own testimony at the administrative hearing where he testified that his condition has worsened, specifically in his hips and back (<u>Id.</u>).   Plaintiff also cites to several medical records which, he claims, emphasizes that his spine condition has worsened (<u>Id.</u> at PageID 745-46).   As the "ALJ erred in his failure to properly consider the evidence regarding worsening[,] . . . his opinion should be reversed or in the least, remanded" (<u>Id.</u> at PageID 746).

As noted above, Defendant's argument on this issue is combined with its argument to whether the ALJ properly considered the opinions of Dr. Oliver and whether the ALJ crafted an RFC that accurately details Plaintiff's abilities (<u>Id.</u> at PageID 785-96), so the undersigned will cite to the relevant arguments for each issue.   Defendant opposes Plaintiff's contention and instead claims that the ALJ found the state agency assessments to be "persuasive" and this included the findings, at both the initial and reconsideration stages, that there was not a material change in Plaintiff's impairments since the prior administrative law judge's decision (DN 22 PageID 791-93).   Defendant also contends that, while the ALJ adopted the restrictions opined by the state agency physicians, the ALJ also "added even more limitations to the RFC to account for later evidence" (<u>Id.</u> at PageID 793).   Defendant characterizes Plaintiff's issue to the <u>Drummond</u> and AR 98-4 determination as nothing more than "a disagreement with how two reasonable people

can view the same set of evidence" and "[t]his does not suffice as a basis for disturbing the Commissioner's decision" (Id. at PageID 794).   Noting a recent Sixth Circuit opinion, Defendant remarks that the Commissioner and a claimant are entitled to seek a "fresh review of a new application for a new period of time," but "for an administrative law judge to take the view that, absent new and material evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application" (Id. at PageID 795) (quoting Earley v. Comm'r of Soc. Sec., 893 F.3d 929, 933-34 (6th Cir. 2018)).   Thus, Defendant contends that the Court should defer to the findings of the ALJ as there is substantial evidence to support their decision, even if there is evidence that would have supported an opposite conclusion (Id.).

2.  Discussion

In Drummond, the Sixth Circuit held that the principles of *res judicata* apply to RFC findings in the final decision of the Commissioner.  *See* 126 F.3d 837, 842-43 (6th Cir. 1997). More specifically, the Sixth Circuit directed that when there is final a decision concerning a claimant's entitlement to benefits and the claimant files a new application for benefits addressing the unadjudicated period of time that proximately follows the adjudicated period of time, the Commissioner is bound by the RFC findings in that final decision absent changed circumstances. Id.  Notably, the Sixth Circuit indicated that the burden is on the Commissioner to introduce substantial evidence demonstrating changed circumstances to escape the principles of *res judicata*. Id. at 843.

In light of Drummond, the Commissioner issued AR 98-4(6) directing states within the Sixth Circuit to follow that holding.   In pertinent part, the Acquiescence Ruling explained:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the [Social

30

> Security] Act as the prior claim, adjudicators must adopt such a
> finding from the final decision by an ALJ or the Appeals Council on
> the prior claim in determining whether the claimant is disabled with
> respect to the unadjudicated period unless there is new and material
> evidence relating to such a finding or there has been a change in the
> law, regulations or rulings affecting the finding or the method for
> arriving at the finding.

AR 98–4(6).   Although <u>Drummond</u> involved a Title II case, AR 98-4(6) recognizes that "similar

principles also apply to Title XVI cases."   <u>Id.</u> at n.1.   Therefore, AR 98-4(6) directs that the

"Ruling extends to both title II and title XVI disability claims."   <u>Id.</u>

In the present case, the ALJ opined the following <u>Drummond</u> discussion:

> The undersigned must also consider Acquiescence Ruling (AR)
> 98-4(6) (*Drummond v. Commissioner of Social Security*) and its
> effect on this decision since a final prior Administrative Law Judge
> decision was made on July 6, 207 that contained a finding relative
> to the claimant's residual functional capacity assessment.   The
> prior decision found that the claimant had the residual functional
> capacity to perform sedentary work including lift/carry ten pounds
> occasionally, and less than ten pounds frequently[;] sit for six of
> eight hours and stand/walk for two in an eight-hour workday.   He
> can occasionally push and pull with the bilateral low extremities.
> He can occasionally operate foot controls with the bilateral lower
> extremities.   He can never climb ladders, ropes, or scaffolds, but he
> can occasionally climb ramps and stairs.   He can occasionally
> stoop, kneel, crouch, and crawl.   He must void concentrated
> exposure to temperature extremes, such as heat and cold.   He must
> avoid concentrated exposure to pulmonary irritants, such as fumes,
> dust, odors, gases, and areas of poor ventilation.   He must avoid
> concentrated exposure to vibration and dangerous workplace
> hazards, such as moving machinery and unprotected heights.   (Ex.
> B1A [Tr. 70-92])   Under the Acquiescence Ruling and *Drummond*,
> the undersigned may not make a different finding in adjudicating a
> subsequent disability claim with an unadjudicated period arising
> under the same title of the Act as the prior claim unless new and
> additional evidence or changed circumstances provide a basis for a

> different finding.  The objective record does not demonstrate a significant worsening in the claimant's impairments.  The updated imaging showed largely mild degenerative changes and the exams of record are essentially unremarkable but for tenderness and reported pain with range of motion.  While the undersigned has not adopted the specific impairments of the prior decision, the findings herein are consistent with the prior decision limiting the claimant to less than the full range of sedentary work.  Accordingly, the undersigned generally adopts this prior finding with minimal adjustments, as there is no basis to make a different finding.  Pursuant to *Dennard*, the claimant remains unable to perform his past relevant work.

(Tr. 10-11).

Plaintiff's argument against the ALJ's Drummond determination is supported by a singular answer from his testimony at the administrative hearing, one subjective complaint of increased pain at a singular visit to an APRN, and the same spine MRI that the ALJ referenced (DN 17-1 PageID 745-46) (citing Tr. 55, 544, 548).  When discussing the lumbar spine MRI, Plaintiff concedes that "it does not show any significant worsening[,]" but Plaintiff's argument is that "there is no correlating MRI of the thoracic spine to be considered" (Id. at PageID 746) (citing Tr. 548).  When looking to the document which contains Plaintiff's subjective complaint of pain (Tr. 544), this document has already been discussed in this opinion.  Plaintiff cited this document as an example of ineffective ambulation, where Plaintiff reiterated subjective complaints of difficulty walking and "feel[ing] like his legs are going to give out" and now the document is being cited where Plaintiff complained of "significant increasing low back pain" (DN 17-1 PageID 741, 745-46) (citing Tr. 544).  Plaintiff's testimony regarding his pain has also been previously discussed in this opinion.  The ALJ found Plaintiff's complaints of pain "concerning the intensity, persistence and limiting effects of the[] symptoms [to be] not entirely consistent with the medical

32

evidence and other evidence in the record" (Tr. 17).   The ALJ found Plaintiff's complaints of pain "concerning the intensity, persistence and limiting effects of the[] symptoms [to be] not entirely consistent with the medical evidence and other evidence in the record" (Tr. 17).

As to both portions of this argument, the ALJ's determination specifically cited to Tr. 544 when discussing Plaintiff's low back pain in the RFC analysis.   In the determination, the ALJ stated that Plaintiff reported that his medication allowed him to properly care for his son and grandmother, his low back pain was adequately controlled with medication and was no longer interfering with daily functions, and "significant[] improve[ment]" from a lumbar branch block and bilateral SI joint injection (Id.).   In the following paragraph of the determination, the ALJ noted MRI findings of "mild degenerative change at the L4-5 disc level but was otherwise a negative study" and "no spinal stenosis or nerve root compression" (Id.) (citing 542, 544, 548). Thus, while Plaintiff contends that the ALJ "erred in his failure to properly consider the evidence regarding worsening" (DN 17-1 PageID 746), the ALJ's determination demonstrates that the ALJ had considered all these aspects and still came to the conclusion that "[t]he objective record does not demonstrate a significant worsening in [Plaintiff]'s impairments" (Tr. 11).

Therefore, after reviewing Plaintiff's arguments, the ALJ's determination, and the evidence in the administrative record, the AL's determination is supported by substantial evidence and comports with applicable law.   Thus, Plaintiff's arguments are unavailing.

### Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."   Warner v. Comm'r of Soc. Sec., 375 F.3d

387, 390 (6th Cir. 2004).   Regardless of how this Court may view the evidence, it is not this

Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this

Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ

followed the applicable law.   Id.   After reviewing the record, the Court concludes that the ALJ's

determination is supported by substantial evidence in the record and correctly followed the

applicable law.   Therefore, Plaintiff is not entitled to relief with regard to his challenge.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

March 2, 2022

Copies:          Counsel of Record